IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In Re: The Complaint and the Petition of the United States of America in a Cause for Exoneration from or Limitation of Liability with Respect to National Park Service and Public Vessels Buoy Tender No. 450, No. 257, No. 2510, No. 256, No. 2511 and No. 290 Re: The Grounding of a 21' Speedboat in or near Bullfrog Bay on Lake Powell, Utah, on July 24, 2016 | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO TRANSFER VENUE**<br><br>Case No. 4:18-cv-00065-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Claimants D.D and G.D., by and through Paul Theut, Guardian ad Litem ("Theut"), and Claimant Tara Gagliardi ("Gagliardi") seek to transfer venue for this case to the District of Arizona.[1] Limitation Plaintiff United States of America ("United States") and Claimant Aramark Sports and Entertainment Services, LLC ("Aramark") oppose the case's transfer.[2] Because transfer is inconsistent with the applicable venue provision of the Public Vessels Act ("PVA"), and because a transfer to the District of Arizona is not in the interest of justice for the convenience of the parties and witnesses, Theut and Gagliardi's Motion to Transfer Venue[3] is DENIED.

---

[1] Notice of Motion, Motion and Points and Authorities in Support of Motion to Transfer Venue to the District of Arizona Pursuant to Supplemental Rules for Admiralty and Maritime Claims for Forfeiture Actions, Rule F(9), by Claimants D.D. and G.D., by and through Paul Theut, Guardian ad Litem, and Tara Gagliardi ("Motion to Transfer Venue"), docket no. 266, filed June 26, 2020.

[2] United States' Opposition to Motion to Transfer Venue to the District of Arizona ("United States' Response"), docket no. 294, filed July 24, 2020; Aramark Sports and Entertainment Services, LLC's Opposition to Motion to Transfer Venue to the District of Arizona ("Aramark's Response"), docket no. 297, filed July 29, 2020.

[3] Docket no. 266, filed June 26, 2020.

**Contents**
DISCUSSION ................................................................................................................. 2
    Transfer of venue is inconsistent with the applicable PVA venue provision ..................... 2
    Transfer of venue to the District of Arizona is not in the interest of justice for the
        convenience of the parties and witnesses ................................................................. 5
        The convenience of the parties does not favor transfer ......................................... 6
        The convenience of material witnesses does not favor transfer ............................ 7
        The availability of process to compel the presence of witnesses does not favor
            transfer .................................................................................................................. 9
        The cost of obtaining the presence of witnesses does not favor transfer .............. 10
        The relative ease of access to sources of proof does not favor transfer ................ 11
        The congestion of the court's calendar does not favor transfer ........................... 12
        Where the events in issue took place does not favor transfer .............................. 12
        The interests of justice in general do not favor transfer ....................................... 13
ORDER ........................................................................................................................... 15

## DISCUSSION

**Transfer of venue is inconsistent with the applicable PVA venue provision**

Determination of Theut and Gagliardi's Motion to Transfer Venue implicates the Limitation of Liability Act ("LOLA"),[4] the Suits in Admiralty Act ("SIAA"),[5] and the PVA.[6] LOLA governs actions for exoneration from and limitation of liability. It establishes that the owner of a vessel may initiate an action seeking exoneration from or limitation of liability on claims arising from, among other things, "any loss, damage, or injury by collision . . . done, occasioned, or incurred, without the privity or knowledge of the owner."[7] LOLA does not contain provisions regarding venue or the transfer of venue. Rather, Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which sets forth the

---

[4] 46 U.S.C. §§ 30501 through 30512.

[5] *Id*. §§ 30901 through 30918.

[6] *Id*. §§ 31101 through 31113.

[7] *Id*. §§ 30505(b), 30511(a).

procedural rules for LOLA actions,[8] includes the general rules for venue and the transfer of venue for LOLA actions.[9]

Under Rule F(9), "[f]or the convenience of parties and witnesses, in the interest of justice, the court may transfer [a LOLA] action to any district[.]"[10] However, the United States initiated this LOLA action.[11] In creating the waivers of sovereign immunity for admiralty claims against the United States, "Congress has seen fit to establish some limitations as to where the [g]overnment is subject to suit."[12] The statutory authorizations for the United States to seek exoneration from or limitation of liability as a public vessel owner are found in the SIAA[13] and PVA.[14] And the claims asserted by Theut and Gagliardi against the United States are brought under the SIAA and PVA.[15] Therefore, the availability of a transfer for this case must be determined in light of the venue provisions of the SIAA and PVA.

The SIAA waives sovereign immunity for *in personam* claims where "(1) a vessel is owned by the United States or operated on its behalf, and (2) there is a remedy cognizable in admiralty for the injury."[16] The SIAA's venue provision authorizes an action to be brought in the district court in which "(1) any plaintiff resides or has its principal place of business; or (2) the

---

[8] *In re Aramark Sports & Entm't Servs., LLC*, 831 F.3d 1264, 1272-1273 (10th Cir. 2016).

[9] FED. R. CIV. P. SUPP. ADMIRALTY RULE F(9).

[10] *Id*.

[11] Complaint of the United States in a Cause for Exoneration from or Limitation of Liability ("Complaint"), docket no. 2, filed Sept. 26, 2018.

[12] *Martin v. United States*, 323 F. Supp. 1131, 1133 (E.D. Penn. 1970).

[13] 46 U.S.C. § 30910.

[14] *Id*. § 31106.

[15] Amended Claim and Answer to Complaint for Exoneration from or Limitation of Liability Pursuant to Supplemental Rule F, docket no. 312, filed Aug. 21, 2020; Amended Claim and Answer to Complaint for Exoneration from or Limitation of Liability Pursuant to Supplemental Rule F, docket no. 313, filed Aug. 21, 2020.

[16] *Cannon v. Austal USA, LLC*, no. 15-cv-2582-CAB (BLM), 2016 WL 4916966, *6 (D. Cal. Apr. 11, 2016) (citing *Ali v. Rogers*, 780 F.3d 1229, 1233 (9th Cir. 2015)); 46 U.S.C. § 30903(a).

vessel or cargo is found."[17] And like Rule F(9), the SIAA permits the transfer of venue "to any other district court of the United States."[18]

The PVA, on the other hand, is narrower in scope than the SIAA. The PVA waives sovereign immunity for *in personam* claims in admiralty for "(1) damages caused by a public vessel of the United States; or (2) compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States."[19] The applicable PVA venue provision authorizes an action to be brought only "in the district court . . . for the district in which the vessel or cargo is found within the United States."[20] And there is no provision in the PVA for a transfer of venue.

The PVA incorporates all consistent provisions of the SIAA.[21] But were inconsistencies exist, the provisions of the PVA will apply.[22] It is recognized that although containing differing language, the venue provisions of the SIAA and PVA are consistent.[23] But that is not the issue in this case. Rather, the issue is whether the SIAA's provision for the transfer of venue is consistent with the applicable PVA venue provision.

Under the PVA, when the vessel or cargo is found in the United States, venue is limited to the district in which the vessel or cargo is found.[24] Because venue is proper in only one

---

[17] 46 U.S.C. § 30906(a).

[18] *Id*. § 30906(b).

[19] *Id*. § 31102(a).

[20] *Id*. § 31104(a). When the vessel or cargo is outside the territorial waters of the United States, the PVA authorizes an action to be brought "in any district in which any plaintiff resides or has an office for the transaction of business." *Id*. § 31104(b)(1). And if no plaintiff resides or as an office in the United States, the action may be brought in any district. *Id*. § 31104(b)(2).

[21] *Id*. § 31103.

[22] *Marine Coatings of Alabama v. United States*, 71 F.3d 1558, 1561 (11th Cir. 1996) (citing *United States v. United Cont'l Tuna Corp*, 425 U.S. 164, 181 (1976)); *Cannon*, 2016 WL 4916966, *6.

[23] *Dillon v. United States*, 357 F. Supp.3d 49, 65 (D. Mass. 2019).

[24] 46 U.S.C. § 31104(a).

district,[25] the PVA contains no provision for a transfer of venue. And it would be inconsistent with the PVA's plain language to permit venue to be transferred to another district. Therefore, the SIAA's (and Rule F(9)'s) venue transfer provision is inconsistent with the PVA.

Because the public vessels which are the subject of this case were found in Utah when the United States initiated the case,[26] the District of Utah is the only proper venue for this case under the PVA.[27] A transfer of the case's venue to the District of Arizona would be improper under and inconsistent with the PVA.

### Transfer of venue to the District of Arizona is not in the interest of justice for the convenience of the parties and witnesses

Even if the case's transfer were consistent with the PVA, a transfer of venue for this case to the District of Arizona is not in the interest of justice for the convenience of the parties and witnesses.[28] The relevant factors for determining whether a transfer is appropriate under Rule F(9) are the same as the factors under 28 U.S. C. § 1404(a).[29] These include:

> (1) the convenience of the parties; (2) the convenience of material witnesses; (3) the availability of process to compel the presence of witnesses; (4) the cost of obtaining the presence of witnesses; (5) the relative ease of access to sources of proof; (6) calendar congestion; (7) where the events in issue took place; and (8) the interests of justice in general.[30]

---

[25] *Id.*; *Cannon*, 2016 WL 4916966, *6.

[26] Declaration of Amber Bryant ¶¶ 1-2, docket no. 294-1, filed July 24, 2020; Declaration of Nick Crowley ¶¶ 1-2, docket no. 294-2, filed July 24, 2020.

[27] 46 U.S.C. § 31104(a); *Cannon*, 2016 WL 4916966, *6.

[28] FED. R. CIV. P. SUPP. ADMIRALTY RULE F(9).

[29] *In re Complaint of Norfolk Dredging Co.*, 240 F. Supp. 2d 532, 534-535 (E.D. Va. 2002); *Matter of TLC Marine Servs., Inc.*, 900 F. Supp. 54, 56 (E.D. Tex. 1995); *Complaint of American President Lines, Ltd.*, 890 F. Supp. 308, 314 (S.D. N.Y. 1995). It does not appear that any Circuit Court of Appeals has addressed the issue.

[30] *Matter of TLC Marine Servs., Inc.*, 900 F. Supp. at 56.

**The convenience of the parties does not favor transfer**

Theut and Gagliardi assert that the minor children, D.D. and G.D., are disabled and have suffered significant mental and emotional distress.[31] They argue that the District of Arizona is a more convenient venue because the minor children reside in Arizona and travel to Utah for trial will create physical hardship and force D.D. and G.D. to leave their counseling and schools, which may aggravate their distress.[32] Theut and Gagliardi also argue that the District of Arizona is more convenient for Gagliardi because she suffers from bipolar mental disorder, and travel to Utah for trial may cause her significant stress and suffering.[33]

The potential for aggravating the mental and emotional conditions of the minor children and Gagliardi is an important consideration in determining a convenient venue. However, the interests and convenience of the other parties must also be considered. "When the government is a party, its convenience is the concern of venue provisions in legislative enactments."[34] And the applicable PVA venue provision establishes Congressional recognition that the convenient venue for the United States in this case is the District of Utah.[35] Additionally, in opposing the Motion to Transfer Venue, Aramark has indicated its preference for venue in Utah and its belief that Utah is a convenient venue for it and its witnesses.[36]

Given the competing interests and assertions of convenience among the parties, the factor of convenience of the parties does not favor transfer to the District of Arizona.

---

[31] Motion to Transfer Venue at 12-14.

[32] *Id*.

[33] *Id*. at 13-14.

[34] *The N. River Arundel Corp. v. United States*, 57 F. Supp. 808, 810-811 (E.D. N.Y. 1944).

[35] 46 U.S.C. § 31104(a); Declaration of Amber Bryant ¶¶ 1-2; Declaration of Nick Crowley ¶¶ 1-2.

[36] Aramark's Response at 2.

**The convenience of material witnesses does not favor transfer**

"The determination of whether [the United States] is entitled to [exoneration from] or limitation [of liability] employs a two-step process."[37] The first step is a determination of "what acts of negligence . . . caused the accident."[38] The second step is a determination of "whether the [United States] had knowledge or privity of those same acts of negligence."[39] And only if the United States is denied exoneration from or limitation of liability, may Theut and Gagliardi pursue their claims for damages in an appropriate forum.[40]

Therefore, the witnesses having the highest degree of materiality in this case are those with knowledge of the alleged acts of negligence that caused the boating accident, and those pertaining to the United States' knowledge or privity of those acts. Theut and Gagliardi assert the "gravamen" of their claims against the United States is: negligent failure to warn; a negligent failure to follow International Association of Marine Aids to Navigation and Lighthouse Authorities Maritime Buoyage System rules; negligent creation of a hazardous condition; negligent supervision and oversight; negligent training and education; and negligent creation of a navigational trap for the unwary.[41]

Theut and Gagliardi argue that the testimony of nonparty, eyewitness passengers at the time of the boat accident—Jennifer Decker and B.D.—are critical to the issue of liability.[42] These witnesses reside in Arizona, and assert that travel to Utah for trial will create a financial

---

[37] *In re Aramark Sports & Entm't Servs., LLC*, 831 F.3d 1264, 1273 (10th Cir. 2016) (quoting *Farrell Lines, Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976)).

[38] *Id*. (quoting *Farrell Lines, Inc.*, 530 F.2d at 10)).

[39] *Id*. (quoting *Farrell Lines, Inc.*, 530 F.2d at 10)).

[40] *Id*. (citing *Pickle v. Car Lee Seafood, Inc.*, 174 F.3d 444, 449 (4th Cir. 1999); *Wheeler v. Marine Navigation Sulphur Carriers, Inc.*, 764 F.2d 1008, 1011 (4th Cir. 1985)).

[41] Motion to Transfer Venue at 20.

[42] Motion to Transfer Venue at 14-16.

hardship on Ms. Decker and may cause mental and emotion distress to B.D.[43] Theut and Gagliardi argue that because of this, there is no guarantee Ms. Decker or B.D. will attend a trial in Utah. The convenience of Ms. Decker and B.D. is an important consideration for determining whether transfer is appropriate.

Theut and Gagliardi also argue that D.D. and G.D's medical providers and other damages witnesses are material witnesses that will refuse to voluntarily appear or cannot afford to appear at a trial in Utah.[44] But unless the United States is denied exoneration from or limitation of liability, these witnesses will not play a significant role at trial. Therefore, their convenience carries less import.

On the other hand, the United States and Aramark will each have material witnesses to the alleged acts of negligence and the United States' knowledge or privity of those acts, including law enforcement witnesses from the State of Utah and Kane County. The United States represents that these witnesses will be available for live testimony at a Utah trial, or if appropriate, through deposition.[45] Thus, Utah is a convenient venue for these witnesses, and the District of Arizona is not necessarily more convenient for them.

While the District of Arizona may be more convenient to some material witnesses, the convenience of those witnesses does not sufficiently outweigh the convenience of other material witnesses who will be available to testify at a Utah trial. Additionally, FED. R. CIV. P. 43(a) "permit[s] testimony in open court by contemporaneous transmission from a different location" on a finding of "good cause in compelling circumstances and with appropriate safeguards."[46]

---

[43] Declaration of Jennifer Decker in Support of Motion to Transfer Venue Pursuant to Supplemental Rule F(9) ("Decker Declaration") at 2-3, docket no. 270, filed June 26, 2020.

[44] Motion to Transfer Venue at 16-17.

[45] United States' Response at 16.

[46] FED. R. CIV. P. 43(a).

Because of the COVID-19 pandemic, the District of Utah has also entered several General Orders which expand the use of testimony taken remotely via Zoom and other platforms.[47] And this court recently conducted a four-day civil bench trial entirely over Zoom.[48] Another judge in this district conducted a two-week bench trial entirely over Zoom.[49] It is unknown whether restrictions on in-court proceedings will still be in place when this case is ready for trial. But the availability of technology to take testimony remotely cuts against Theut and Gagliardi's arguments of hardship and inconvenience.

Moreover, while "[t]he preference for a witness's attendance at trial is axiomatic,"[50] each of the parties' material witnesses have already been or are anticipated to be deposed. And their deposition testimony may, where appropriate,[51] be used at trial in lieu of live testimony. This likewise cuts against Theut and Gagliardi's arguments of hardship and inconvenience.

Therefore, the factor of convenience of material witnesses does not favor transfer to the District of Arizona.

**The availability of process to compel the presence of witnesses does not favor transfer**

Theut and Gagliardi broadly argue that there is no availability of process "to compel any of the critical non-party witnesses as well as critical opposing party witnesses to testify at trial as they all reside in the District of Arizona."[52] They cite no legal authority for this proposition, nor evidence for its factually accuracy. There is no evidence that material law enforcement witnesses

---

[47] https://www.utd.uscourts.gov/united-states-district-courts-district-utah-covid-19-information-center (last visited Sept. 23, 2020).

[48] *Conboy v. Gilbert Dev. Corp.*, 4:18-cv-00090-DN-PK (D. Utah).

[49] *Vitamins Online v. Heartwise, et al.*, 2:13-cv-00982-DAK-JCB (D. Utah).

[50] *Garcia-Martinez v. City and Cty. Of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004).

[51] FED R. CIV. P. 32; FED. R. EVID. 804.

[52] Motion to Transfer Venue at 17.

of the State of Utah and Kane County reside in Arizona. Nor is there evidence that Arizona is the resident state of all of United States and Aramark's nonparty witnesses to the alleged acts of negligence or the United States' knowledge or privity of those acts.

Additionally, while Theut and Gagliardi assert that eyewitnesses Jennifer Decker and B.D. may suffer hardship and inconvenience if trial is held in Utah,[53] they have not demonstrated that compulsion of these witnesses attendance at a Utah trial will be or is likely to be necessary. Compulsion of D.D. and G.D's medical providers and other damages witnesses that would refuse to voluntarily appear at a trial in Utah[54] would also only be necessary if the United States is denied exoneration from or limitation of liability. But in that event, the availability of technology to take live testimony through remote means and the use of deposition testimony diminishes the likelihood that process to compel the presence of these witnesses in Utah will be necessary. And it is represented that the United States and Aramark's party and nonparty material witnesses will be available for live testimony at a Utah trial, or if appropriate, through deposition.[55]

Therefore, the availability of process to compel the presence of witnesses does not favor transfer to the District of Arizona.

**The cost of obtaining the presence of witnesses does not favor transfer**

Theut and Gagliardi argue that because their nonparty medical witnesses, life care planner, and economist are based in Phoenix, Arizona, the cost of obtaining their presence to testify at a trial in Utah will be significantly greater than with an Arizona trial.[56] However, these witnesses will not play a significant role at trial unless the United States is denied exoneration

---

[53] *Id*. at 14-16; Decker Declaration at 2-3.
[54] Motion to Transfer Venue at 16-17.
[55] United States' Response at 16.
[56] Motion to Transfer Venue at 17.

from or limitation of liability. The availability technology to take live testimony through remote means, whether restrictions from the COVID-19 pandemic are present or not, and the use of deposition testimony diminishes the likelihood that these witnesses physical presence in Utah for trial will be necessary.

Therefore, the cost of obtaining the presence of witnesses factor does not favor transfer to the District of Arizona.

**The relative ease of access to sources of proof does not favor transfer**

Theut and Gagliardi repackage their argument regarding the lack of subpoena power over nonparty witnesses residing in Arizona to argue that they will be unfairly prejudiced in their ability to access sources of proof if venue is not transferred to Arizona.[57] This argument is lacking for the same reasons the availability of process to compel the presence of witnesses factor does not favor a transfer of venue.[58]

Theut and Gagliardi also argue that subpoenas will be necessary to compel production of material documents located in Arizona, which relate to the design, placement, and maintenance of the navigation system in Lake Powell; personnel training; and Aramark's involvement with aids to navigation in Bullfrog Bay.[59] However, Theut and Gagliardi acknowledge that these documents are in the possession of the United States and Aramark,[60] and if appropriate, this court can compel these parties to produce the documents.

Therefore, the relative ease of access to sources of proof factor does not favor transfer to the District of Arizona.

---

[57] *Id*. at 18.

[58] *Supra*, Discussion at 9-10.

[59] Motion to Transfer Venue at 18.

[60] *Id*.

**The congestion of the court's calendar does not favor transfer**

Theut and Gagliardi note that from September 2018 through September 2019, the District of Arizona's median time to trial was 30.9 and 36.4 months, and the District of Utah's median time to trial in September 2018 was 45.4 months.[61] This case has been pending for approximately 24 months.[62] Trial is scheduled to begin October 2021,[63] at which time the case will have been pending for approximately 37 months. The parties are currently conducting discovery and have given no indication that the case will be ready for trial at an earlier date.

Therefore, the congestion of the court's calendar factor does not favor transfer to the District of Arizona.

**Where the events in issue took place does not favor transfer**

Theut and Gagliardi do not dispute that the boating accident that gave rise to their claims against the United States occurred in Utah.[64] The public vessels that are the subject of this case also operate almost exclusively in the northern part of Lake Powell; were stationed in Utah at the time of the accident; and were found in Utah when the United States initiated this case.[65] While Theut and Gagliardi's theory of the case includes the boat passengers' observations after launching from Wahweap Marina in Arizona, the primary events of the accident occurred in Utah. Additionally, that certain decisions regarding Lake Powell's navigation system may have been made at the United States National Park Service headquarters in Arizona, and that

---

[61] *Id*. at 18-19.

[62] Complaint.

[63] Second Amended Scheduling Order at 2, docket no. 254, filed Mar. 23, 2020.

[64] Motion to Transfer Venue at 19.

[65] Declaration of Amber Bryant ¶¶ 1-2, docket no. 294-1, filed July 24, 2020; Declaration of Nick Crowley ¶¶ 1-2, docket no. 294-2, filed July 24, 2020.

Aramark's headquarters is located in Arizona,[66] does not sufficient shift the focus of the disputed issues in this case to Arizona. Therefore, this factor does not favor transfer to the District of Arizona.

**The interests of justice in general do not favor transfer**

In arguing the interests of justice in general, Theut and Gagliardi assert that there are no obstacles to the United States having a fair trial in the District of Arizona.[67] But whether the United States will receive a fair trial in Arizona is not the issue. Rather, the issue is whether "[f]or the convenience of parties and witnesses, in the interest of justice,"[68] Arizona is a more appropriate forum for this case.

None of the preceding factors sufficiently favor a transfer of venue to the District of Arizona. The District of Arizona may be a more convenient venue for Theut and Gagliardi and their witnesses, but the asserted inconvenience and hardship they will suffer if venue remains in Utah is not sufficient to overcome the interests and convenience of the United States and Aramark and their witnesses.

Additionally, this case has been pending in the District of Utah for approximately two years.[69] There are over 330 docket entries. And there have been numerous hearings and rulings, including on dispositive motions, scheduling, and discovery disputes. The parties are familiar with this court and the court is familiar with this case, the parties, and counsel.

While transfer to Arizona could lead to consolidation of this case with Theut's pending action against Aramark and the Estate of Jeffrey Darland, the potential for transferring venue of

---

[66] Motion to Transfer Venue at 20.

[67] *Id*. at 20-23.

[68] FED. R. CIV. P. SUPP. ADMIRALTY RULE F(9).

[69] Complaint.

cases involving the boating accident was an issue raised in this case approximately 16 months ago.[70] At that time, the issue was whether certain cases filed in the District of Arizona should be transferred to Utah.[71] The limitation stay was modified to allow the filing of motions for transfer, and a deadline of May 27, 2019, was set for the filing of "[a]ny motions to transfer."[72] With the issue of transferring venue having been raised, there is no obvious explanation for the decision of Theut and Gagliardi to not seek transfer of this case to the District of Arizona at that time.

Theut and Gagliardi argue that they could not have reasonably brought their Motion to Transfer Venue until after Jennifer Decker was deposed on March 13, 2020, and they obtained her declaration asserting the inconvenience and hardship that a Utah trial will pose on her and B.D.[73] This argument is hollow. Ms. Decker has a longstanding personal relationship with Gagliardi, D.D., and G.D.:

> [Ms. Decker has] known D.D. since he was a young child and [has] known him his entire life both before and after the [a]ccident. . . . Gagliardi will frequently help [Ms. Decker] with childcare, as D.D. and G. D. are close with [her] son B.D. . . . [Ms. Decker] care[s] very much for D.D., G.D. and [Gagliardi] and [is] very close to the family.[74]

---

[70] United States of America's and Jeffrey Darland's Joint Motion to Modify Stay for the Limited Purpose of Transferring Previously Filed Action from the District of Arizona to District of Utah, docket no. 158, filed May 2, 2019. Also, four months earlier, on January 11, 2019, Gagliardi, in her separate action against the United States, sought to lift the limitation stay for purposes of filing a motion to transfer that case to the District of Arizona. Motion to Lift Stay for the Limited Purpose of Transferring Venue, ECF no. 22 in *Gagliardi v. United States*, 2:18-cv-00588-DN-PK (D. Utah), filed Jan. 11, 2019. The motion was denied because Gagliardi needed to seek leave in this case to have the limitation stay lifted. Memorandum Decision and Order Denying Motion to Lift Stay for Limited Purpose at 2, ECF no. 24 in *Gagliardi v. United States*, 2:18-cv-00588-DN-PK (D. Utah), filed Jan. 17, 2019.

[71] *Id.*

[72] Order Granting [158] Joint Motion to Modify Stay at 2, docket no. 159, filed May 6, 2019.

[73] Claimants' Reply to United States' Opposition to Motion to Transfer Venue to the District of Arizona by Claimants D.D. and G. D., by and through, Paul Theut, Guardian ad Litem, and Claimant Tara Gagliardi at 9, docket no. 303, filed Aug. 7, 2020.

[74] Decker Declaration at 2-3.

And Theut and Gagliardi knew Ms. Decker would not voluntarily appear for disposition as early as April 15, 2019.[75] But even if the argument were accepted to justify the delay in bringing the Motion to Transfer Venue, it is implicit acknowledgment that the collective other basis on which the Motion to Transfer Venue is grounded are insufficient to warrant transfer to the District of Arizona.

The boating accident that gave rise this case was an extremely traumatic event that has had a significant impact on the lives and wellbeing of the passengers and others. Testifying at trial will be difficult on these witnesses, particularly the minor children, regardless of the trial's venue. When requested, and if appropriate, accommodations will be made to lessen the inconvenience and hardship that testifying at a trial in Utah may have on these witnesses. Ultimately, considering all of the circumstances as they exist at this time, a transfer of this case to the District of Arizona is not in the interest of justice for the convenience of the parties and witnesses.

## ORDER

IT IS HEREBY ORDERED that Theut and Gagliardi's Motion to Transfer Venue[76] is DENIED.

Signed September 28, 2020.

BY THE COURT

_David Nuffer_
David Nuffer
United States District Judge

---

[75] Minute Entry for Proceedings Held Before Judge David Nuffer and Judge Pail Kohler, docket no. 151, filed Apr. 15, 2019.

[76] Docket no. 266, filed June 26, 2020.